UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CARTER LEE TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:  08-209-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Carter Lee Turner ("Turner") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner").  [Record Nos. 13 and 14]  Turner seeks to reverse the decision of an Administrative Law Judge ("ALJ") concluding that he is not entitled to a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.  Having considered the record and the parties' arguments, the Court will grant summary judgment in favor of the Commissioner.

### I.     Background

Turner protectively filed an application for a Period of Disability, DIB, and SSI on June 15, 2004.  His claim was denied initially and on reconsideration.  Turner then requested an administrative hearing before an ALJ. On February 7, 2006, Turner, his attorney, and vocational expert ("VE") William Ellis appeared before ALJ Frank Letchworth in Middlesboro, Kentucky.

Thereafter, the ALJ issued a decision denying benefits to Turner. [Tr., pp. 23 - 30] Turner's request for review of the ALJ's decision was denied by the Appeals Council, then remanded for reconsideration.[1] [Tr., p. 48] On remand, ALJ Letchworth presided over a second hearing on January 24, 2008, at which Turner, his attorney, and VE William Ellis were present. Once again, the ALJ denied Turner a Period of Disability, DIB, and SSI. [Tr., pp. 428 - 437]

As of the date of the ALJ's second decision, Turner was 44 years-old and had an eighth grade education. [Tr., pp. 404, 619] He has past work experience as an underground coal miner, laborer, and truck driver. [Tr., pp. 92, 414] He alleges a disability beginning July 10, 2003, due to anxiety, back, bilateral leg and neck pain, hearing loss, pneumoconiosis, right eye blindness, and hand weakness. [Tr., pp. 125-126] After reviewing the record and the testimony presented at the administrative hearing, the ALJ concluded that Turner suffers from the following combination of severe impairments: mild degenerative disk disease of the lumbar spine, pneumoconiosis, blindness in the right eye, and decreased hearing. [Tr., p. 430] Notwithstanding these impairments, the ALJ determined that Turner retained the residual functional capacity ("RFC") to perform light work. [Tr., p. 433] Specifically, the ALJ found that Turner retained the following RFC:

> to perform light work, except no climbing of ladders, ropes or scaffolds, no more than occasional climbing of ramps or stairs; no more than occasional stooping, bending, crouching, or crawling. Mr. Turner is not able to sit more than 45 minutes uninterrupted or stand more than 30 minutes uninterrupted. He is precluded from work that involves exposure to concentrated levels of pulmonary irritants such as dust, fumes, smoke or noxious gases; work that would require binocular vision, peripheral vision or acute hearing sensitivity; or exposure to unprotected heights, hazardous machinery or vibratory machinery. The claimant is further limited to simple 1-2 step instructions.

---

[1] After the Appeals Council denied Turner's request, Turner sought judicial review in front of this Court; this Court then issued an order reversing the prior administrative decision and remanded his case to the Commissioner for further reconsideration.

[Tr., p. 433]

Based on these findings and the VE's testimony, the ALJ concluded that Turner was not disabled, as defined in the Social Security Act, from July 7, 2003, through the date of the decision (March 7, 2008). Consequently, Turner was not entitled to a period of disability, DIB, or SSI under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. [Tr., p. 437]

**II.     Legal Standard**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Barnhart v. Thomas*, 540 U.S. 20, 23 (2003) (quoting 42 U.S.C. § 1382c(a)(3)(B)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). This definition is qualified, however, as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy*.

*Id.* (emphasis from *Thomas* included).

A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *See* 20 C.F.R. §§ 404.1520 and 416.920; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b).

Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine if he can perform other work which exists in the national economy.[2] 20 C.F.R. §§ 404.1520(e) and 416.920(e). If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The

---

[2] "'[W]ork which exists in the national economy' is defined to mean 'work which exists in significant numbers either in the regions where such individual lives or in several regions of the country.'" *Thomas*, 540 U.S. at 23–24.

substantial evidence standard presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantive evidence in the record. 42 U.S.C. § 405(g).

### III. Analysis

Turner asserts that the Commissioner's decision denying benefits is not supported by substantial evidence. Specifically, he alleges that the ALJ: (1) failed to adequately consider Listing 12.05 C; (2) improperly rejected the opinion of his treating physician, Dr. Peter Wright; and (3) did

not incorporate into his hypotheticals all the restrictions set forth in the functional capacities form completed by Dr. Daniel Stewart.

### A. Listing 12.05C

Turner first argues that "the ALJ failed to adequately consider Listing 12.05C." [Record No. 13] Listing 12.05C sets forth requirements for a finding of mental retardation, in relevant part, as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. [T]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The Sixth Circuit has repeatedly clarified that a finding of presumptive disability under Listing 12.05C requires the claimant to satisfy the specific factors of paragraph C, as well as the diagnostic description in the introductory paragraph. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (holding that "[a] claimant must demonstrate that the impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder"); *Cooper v. Comm'r of Soc. Sec.,* 217 F. App'x 450, 452 (6th Cir. 2007). Thus, to make a claim under Listing 12.05C, a claimant must prove the following: (1) the claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period (i.e, the diagnostic period)"; (2) the record demonstrates a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) the claimant suffers from "a physical or other mental impairment imposing an additional and significant

work-related limitation of function." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007); *see also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, an IQ score and a diagnosis of mild retardation alone do not satisfy the requirements of Listing 12.05C.

Turner asserts that his documented IQ score of 67, Dr. Reba Moore's diagnosis of mild mental retardation, and the ALJ's finding that Turner suffered from a severe combination of impairments, establish that he suffers from mental retardation as it is defined under Listing 12.05C. Dr. Reba Moore, a licensed psychological practitioner, examined Turner on February 13, 2008, finding that he had a verbal IQ of 67, a performance IQ of 74, and a full scale IQ of 67. [Tr., p. 610] Dr. Moore concluded that Turner's full scale IQ score of 67 "falls within the range of Mild Mental Retardation and is deemed a valid and reliable representation of his current intellectual functioning." [Tr., p. 611] Dr. Moore further noted that she found no evidence that Turner ever functioned significantly higher. [Tr., p. 611]

The ALJ rejected the findings of Dr. Moore relative to the mental health diagnoses, declaring that there was no evidence of mental retardation during Turner's developmental period. [Tr., p. 435] Specifically, Dr. Moore had improperly based Turner's overall IQ score on his current intellectual functioning, as opposed to his intellectual functioning before the age of 22. As noted by Dr. Moore, Turner's overall IQ score may also have been impacted by the fact that he was suffering from depression and anxiety at the time. [Tr., p. 612] Dr. Moore further acknowledged that Turner's thinking is concrete, that he is able to adequately relate with others, and that he is competent to manage his own finances. [Tr., p. 612] Moreover, Dr. Moore's mental retardation diagnosis is

inconsistent with the state agency psychological consultants' findings that Turner had no medically determinable mental impairment. [Tr., pp. 321-334, 335-350]

Further, Turner's level of adaptive functioning throughout his life is contrary to his current low IQ scores. The evidence indicates that Turner has a fifteen-year work history as a roof bolter in the coal mining industry, a light mechanic, and a tractor and trailer driver, demonstrating his ability to perform semi-skilled tasks. [Tr., p. 414] Turner himself declared that the aforementioned tasks were fast paced, requiring attention and concentration. [Tr., p. 416] Before the age of 22, Turner admitted he never attended any special classes and never repeated a grade in school. [Tr., p. 619] Additionally, Turner's own statements establish that, through the years, he has been able to pass a written driver's license test, drive for 45 minutes or less without stopping, read a newspaper, read a grocery list, walk a mile per day, and care for his children. [Tr., pp. 404 - 405, 619, 632-634] Further, in 2007, Turner was able to attend to various household chores, such as vacuuming the carpet and tending the yard. [Tr., pp.602, 604]

In summary, Dr. Moore's finding of mild mental retardation was inconsistent with other evidence in the record showing that Turner was not, and had not previously been, mentally retarded. Thus, the ALJ properly rejected Dr. Moore's opinion and substantial evidence supports his conclusion that Turner did not meet the requirements for Listing 12.05C.

### B. The Opinion of the Treating Physician

Second, Turner argues that the ALJ improperly rejected the opinion of Turner's treating physician, Dr. Peter Wright. The opinions of treating physicians are generally entitled to greater weight than those of non-treating physicians. *Rogers*, 486 F.3d at 242. This is because treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal

picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2) (2006). However, if the ALJ does not give a treating physician's opinion controlling weight, he must always give "good reasons" for doing so. *Bass*, 499 F.3d at 509; *Roger,* 486 F.3d at 242. This "reasons-giving requirement" draws from 20 C.F.R. § 404.1527(d)(2) (2006) and 20 C.F.R. § 416.927(d)(2), which list a number of factors that the ALJ may use in his determination: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability through medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) specialization of treating source. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 545.

It is well-settled that the ultimate issue of disability is reserved to the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, No. 07-6111, 2008 U.S. App. LEXIS 13675, at *11 (6th Cir. June 25, 2008); *Bass*, 499 F.3d at 511; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). An ALJ need not credit a treating physician's conclusory opinion of disability, especially if it is inconsistent with other evidence in the medical record. *See Cutlip*, 25 F.3d at 286 (rejecting treating physicians' opinions because "they were conclusory and inconsistent with the other evidence"). Here, the ALJ chose not to confer controlling weight to Dr. White's opinion. In a summary statement dated January 26, 2006, Dr. Wright stated that, because of Turner's current condition, Turner was unable to work at that time. [Tr., p. 380] The ALJ, however, did not merely cast aside Dr. Wright's opinion without explanation. *See, e.g.,*

*Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (vacating the Commissioner's denial of disability benefits because the ALJ failed to even mention the contrary opinion of the claimant's treating psychologist). Rather, the ALJ clearly stated that:

> Dr. Wright stated that the claimant was disabled. However, Dr. Wright also stated that with vocational retraining Mr. Turner might be employable in the future. At any rate, whether the claimant is "disabled" or able to work is an administrative decision requiring the consideration of medical findings and vocational factors in the context of legal standards and reserved to the Commissioner.

[Tr., p. 435] In addition, the ALJ found that Dr. White's disability opinion, which was premised on Turner's alleged level of pain, was inconsistent with Turner's report that his pain was well controlled by the medications prescribed by Dr. White. [Tr., p. 431]

Further, the ALJ determined that Dr. White's opinion was contradicted by the opinions of other physicians. The ALJ summarized the findings of neurologist Dr. James R. Bean, Kentucky Physical Therapy, Dr. Peter Wright, Dr. Charles Hieronymus, Dr. Bobby J. Kidd, Jr., Dr. Christina U. Muckenhausen, Dr. Sharon Colton, consultative examiner Dr. Daniel Sean Stewart, state agency medical doctors, and psychologist Dr. Reba Moore. [Tr., pp. 431-433] Dr. Colton, Turner's primary care physician, never found him disabled. [Tr., p. 434] In fact, when Dr. Colton examined Turner on August 6, 2004, she questioned Turner's effort on the examination. [Tr., p. 435] Subsequently, during an examination on October 1, 2004, Dr. Colton reported that Turner "can do more than just lay around." [Tr., p. 435] Further, Dr. Bean, another treating physician, ultimately recommended physical therapy, as opposed to a more serious measure such as surgery. [Tr., pp. 355, 431] As a result, Kentucky Physical Therapy concluded that Turner could perform in the light-medium exertional range with postural limitations. [Tr., pp. 141, 431] Dr. Bean, upon reviewing Kentucky Physical Therapy's conclusion, noted Turner would have permanent restrictions of 30 pounds of

-10-

lifting and occasional bending or twisting, but no more than 8% of the time. [Tr., pp. 325, 431] State agency medical examiners reached comparable conclusions that also differed from Dr. White's ultimate disability conclusion. *See Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

Dr. White's conclusion was also inconsistent with Turner's reported daily activities. *See Walters v. Comm'r of Soc. Servs.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). The ALJ stated that

> [D]ocumentary and testimonial evidence shows that [Turner] participates in a variety of activities not commensurate with a physically handicapped individual. The claimant initially reported that he basically was sedentary and performed no household chores or yard work. However, the medical evidence reveals he was weed eating in September 2007 and vacuuming in November 2007. In addition, the claimant testified that he drove to the hearing, which took 40 minutes and he did not have to stop.

[Tr., p. 434] These observations are supported by Turner's own testimony and medical documentation. [Tr., pp. 602, 604, 619]. The ALJ also found that Turner's testimony concerning the "intensity, duration and limiting effects of [his] symptoms" was not entirely credible. [Tr., p. 434] "We are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has [had] the opportunity, which we do not, of observing a witness's demeanor while testifying." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Turner testified to experiencing "some 'mild to moderate' level of musculoskeletal discomfort or other symptoms related to his diagnosed condition," but the ALJ pointed out that

Turner himself stated that this pain was well controlled with medication. [Tr., p. 431] Further, Turner's other clinical and diagnostic examinations were relatively unremarkable with no documentation of any mulsculoskeletal or neurological abnormality. [Tr., p. 434] For example, on September 8, 2004, Turner was examined by consultative physician Dr. Bobby J. Kidd. During this examination, Turner complained of bulging and herniated disks in his back, resulting in back pain which radiated into both hips and legs. Dr. Kidd, however, observed Turner "to have a normal gait which was not unsteady, lurching or unpredictable." [Tr., p. 432] Also, "Dr. Kidd reported no abnormalities of the cervical spine or dorsolumbar spine," nor was there any "evidence of paravertebral muscle spasm, the straight leg raising test was negative." [Tr., p. 432] Further, Turner "was able to walk on his heels and toes, perform tandem gait, and squat without difficulty." [Tr., p. 432] In addition, the ALJ noted that Turner "is a substance abuser," evidenced by the fact that "he repeatedly requested Lortab, there were instances of street purchases of Lortab, he tested positive for cocaine on two occasions and he was actually dismissed from the pain clinic due to his use of cocaine." [Tr., p. 434]

The ALJ's assessment of Turner's daily activities, Turner's credibility, and the record in its entirety, coupled with reports offered by Dr. Colton, Dr. Bean and Kentucky Physical Therapy, led the ALJ to conclude that there was "no evidence to support a finding of total disability based on any physical impairment." [Tr., p. 434] Thus, while the ALJ acknowledged Dr. White's status as a treating physician, he properly rejected his opinion.

### C. The ALJ's Hypothetical Questions

Turner's final argument is that the ALJ erred in formulating his hypothetical question to the VE. In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the

Commissioner's denial of benefits because a faulty hypothetical question did not accurately describe the claimant's abilities. As the Court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of [the claimant's] individual physical and mental impairments." *Id.* at 239; *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberg*, 514 F.2d 293, 294 (6th Cir. 1975). Where a hypothetical question fails to accurately describe the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).[3]

At Turner's hearing, the ALJ asked the VE to assume someone of Turner's age, education, and work experience. In addition to this background, the ALJ added:

> [C]laimant is capable of performing a range of light exertion. The claimant can do no climbing of ladders, ropes or scaffolds. He can occasionally climb ramps or stairs, stoop, bend, crouch or crawl. The claimant is precluded from work that involves exposure to concentrated levels of pulmonary irritants. This would include dusts, fumes, smoke, chemicals or noxious gasses. The claimant is unable to perform any work that would require binocular vision, peripheral vision or acute hearing sensitivity. He cannot perform work exposing him to unprotected heights, hazardous machinery, or exposure to vibratory equipment. Limited marginal literacy. The claimant is limited to simple one or two-step instructions.

---

[3] In *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), the Sixth Circuit held that "there is some confusing language in *Howard* that could conceivably be viewed as requiring that hypothetical questions include lists of claimants' medical conditions. However, we conclude that, given the facts present in *Howard*, that language is not part of its holding, nor can it be so construed if *Howard* is to be read to be consistent with the holdings of our prior decisions." *Id.* at 632-33. Thus, the Sixth Circuit has unequivocally stated that the ALJ is *not* required to present an exhaustive list of a claimant's medical conditions to the VE in his hypothetical.

[Tr., p. 635] The ALJ asked the VE if a person with this background and limitations would be able to perform any occupations at the light exertional level. The VE replied that there would be jobs in the regional or national economies that such a person might perform, and proceeded to identify several specific jobs and the number of openings of those jobs in the region. [Tr., pp. 635-636]

The ALJ asked a second hypothetical question, with the following additional physical restrictions: "[T]he claimant could stand no more than 30 minutes uninterrupted. The claimant could sit no more than 45 minutes uninterrupted." [Tr., p. 636] The ALJ asked the VE whether the additional limitations would affect the VE's answer to the prior hypothetical. The VE replied that the additional restrictions would reduce the number of jobs in the regional or national economies by ten percent. [Tr., p. 636] The VE went on to list the number of jobs that would be permitted given the hypothetical conditions posed by the ALJ. The ALJ asked a third hypothetical question, with the following additional restrictions:

> [T]he claimant can lift and carry less than 20 pounds on an occasional basis. He can lift and carry less than ten pounds on a frequent basis. He can sit for two of eight hours. He can stand or walk for two of eight hours. He has a poor or no ability to make all of the following adjustments: follow rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with job stress; function independently; maintain attention, concentration; understand and perform a detailed, simple and complex job instructions; maintain personal appearance; behave in an emotionally-stable manner; relate predictably in social situations.

[Tr., p. 636] The ALJ asked the VE whether the additional restrictions would affect the VE's answer to the previous hypothetical. The VE responded that the additional restrictions would eliminate not only the previously set forth jobs, but all jobs. [Tr., pp. 636-637] The ALJ's hypothetical questions were drawn from numerous sources, including the medical records of Dr. Colton, Dr. Bean, Kentucky Physical Therapy, Dr. Stewart, and Dr. Hieronymus. [Tr., pp. 434-435]

Turner asserts that the ALJ erred by failing "to ask the VE to assume all of the restrictions set forth in the Functional Capacities form completed by Dr. Stewart." [Record No. 13]  The ALJ appears to have given more weight to Dr. Stewart's telephone dictation report restricting Turner to lifting 10 to 15 pounds, as opposed to Dr. Stewart's Functional Capacity form restricting Turner to lifting no more than 10 pounds.[4]  This decision is supported by the record.  In fact, Dr. Colton, Dr. Bean, and Kentucky Physical Therapy all acknowledged that Turner retained the ability to lift up to 30 pounds.  [Tr., pp. 181, 165, 170-171]  Specifically, Dr. Colton stated that Turner "might be able to accomplish light duty with lifting/push/pull restrictions of 30 pounds." [Tr., p. 281]  Further, Dr. Bean noted that Turner's functional capacity examination indicated a 30-pound lifting restriction.  [Tr., p. 352]  Consequently, the ALJ's decision to include in his hypothetical questions to the VE a lifting restriction which exceeded the 10-pound limitation included in Dr. Stewart's Functional Capacity form is supported by substantial evidence.  [Tr., p. 634]

**IV.    Conclusion**

Having reviewed the record and the parties' arguments regarding Turner's allegations of disability, this Court agrees with the ALJ's findings and conclusions.  The ALJ properly rejected the findings of Dr. Moore, and concluded that Turner did not meet the requirements of Listing 12.05C.  Further, the ALJ properly rejected Dr. White's ultimate opinion of disability.  Finally, the ALJ incorporated all relevant and credible limitations on Turner's ability to work in his hypothetical to the VE.  Substantial evidence in the record supports the ALJ's determination that Turner is not disabled.

---

[4] Turner acknowledges, and the Commissioner concedes, that a discrepancy exists between Dr. Stewart's Functional Capacity form and Dr. Stewart's telephone dictation report.

Accordingly, it is hereby **ORDERED** as follows:

1.  Plaintiff Carter Lee Turner's Motion for Summary Judgment [Record No. 13] is **DENIED**;

2.  Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 14] is **GRANTED**; and

3.  The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 25th day of February, 2009.



Signed By:
Danny C. Reeves   DCR
United States District Judge